UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP J. SEILER, | No. C 04-2911 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| J. BROWN, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner Phillip Seiler filed a petition in this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The court ordered respondent J. Brown, Warden, to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it and lodged exhibits with the court. Respondent also filed a motion to dismiss, which this court denied. Petitioner filed a traverse. For the reasons discussed below, the court DENIES the petition.

## BACKGROUND

Petitioner, who is currently in the custody of the California Department of Corrections and Rehabilitation at California State Prison, San Quentin, pled guilty in 1989 to a charge of second degree murder with special enhancements, a violation of California Penal Code sections 187 and 12022.5, for shooting and killing his wife's lover in 1988. *See* Memorandum of Points and Authorities in Support of Petition ("Pet. Mem.") at 1. The trial court sentenced him to fifteen years to life, with a two-year enhancement for use of a firearm. *Id.* In 2003, he was found suitable for parole and granted parole by the Board of Prison Terms ("BPT"), a decision the Governor of California reversed. *Id.* at 2. Petitioner challenged the validity of the reversal in state habeas petitions, later denied, that he filed

with the Marin County Superior Court, the California Court of Appeal, and the Supreme Court of California. Petition at 6-7. Petitioner again challenges the validity of the Governor's decision in the present petition. Pet. Mem. at 3-4.

Petitioner asserts three claims: (a) the Governor's reversal violated his plea agreement; (b) the Governor's power to review the BPT's decision violates the ex post facto clause of the United States and California Constitutions; and (c) the Governor's reversal of the BPT's decision violated his constitutionally protected liberty interest in parole because it was not based on any evidence. *Id.* at 5.

## STANDARD OF REVIEW

A federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court decision is an

"unreasonable application" of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *See Williams (Terry)*, 529 U.S. at 413.

A reviewing federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-1092 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case the superior court's denial of petitioner's state habeas petition.  *See Ylst* at 801-806; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

On November 8, 1988 "California voters approved Proposition 89, which added Section 8(b) to Article V of the California Constitution to provide for review [of parole board decisions] by the governor." *Johnson v. Gomez*, 92 F.3d 964 (9th Cir. 1996).

**DISCUSSION**

*A.    The Governor's Decision Did Not Violate the Plea Agreement*

   *1.    Background*

Petitioner contends that the Governor's reversal of the BPT's decision violates his plea agreement because it impairs "vested rights acquired under prevailing law existing at the time he committed his crime...attaching an unanticipated disability to his negotiated plea and subsequent sentence." Pet. Mem. at 9.[1]

---

[1] Petitioner raises two more contentions under this claim, specifically that there is an ex post facto violation and that his plea may not have been voluntary. *See* Pet. Mem. at 9, 10-11. The ex post facto claim is dealt with in the subsequent section of this order. As to the contention that his plea may not have been voluntary, the court finds that such a contention

3

*2. Applicable Federal Law*

A defendant has a due process right to enforce the terms of his plea agreement. *See Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (*en banc*). When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

However, the Ninth Circuit has held that California contracts, including plea agreements, are "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws." *Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006) (quoting *People v. Gipson (In re Gipson)*, 117 Cal. App. 4th 1065, 1070 (2004)).

*3. Analysis*

*Davis* controls. The Ninth Circuit has deemed that a California contract, such as petitioner's plea agreement, incorporates and contemplates the reserve power of the state to amend the law, such as when the voters added Article V, section 8(b) to the California Constitution. Inherent in the agreement is, therefore, a recognition of the state's power, to change the final decision-maker from the BPT to the Governor. (Whether the use of this power is otherwise constitutionally sound is addressed below.) Thus the State cannot be said to violate a plea agreement when it acts in accordance with a new law that is necessarily incorporated into the agreement. Moreover, petitioner has advanced no evidence or argument that either the prosecutor or the trial court made any promises to him with respect to parole. In other words, there is no evidence that parole was even part of the plea agreement. Thus the court finds no merit in petitioner's contention that his plea agreement was breached. Accordingly, habeas relief is denied on this claim.

---

goes to the validity of petitioner's plea, which is not an issue appropriately raised in a petition attacking the denial of parole. Such a contention would have to be raised in a separate petition directed toward his conviction.

B.     *The Governor's Decision Does Not Violate the Ex Post Facto Clause*

*1.     Background*

Petitioner contends that at the time he pled guilty the BPT was the "sole entity authorized to determine when a convicted murder [*sic*] would be released." Pet. Mem. at 13. Petitioner contends that the Governor's "clearly retroactive application of that power against Petitioner has prolonged his incarceration" and therefore violates the "constitutional bar against ex post facto application of law." *Id.* at 12. The court notes that Article V, section 8(b) of the California Constitution, which grants the Governor power to review, modify and reverse decisions of the Board of Prison Terms, was adopted after petitioner committed his commitment offense.

*2.     Applicable Federal Law*

Application of the ex post facto clause, according to the Supreme Court, is limited to criminal legislation that effects an increase in punishment, criminalizes conduct that was not previously criminal, or requires more proof for conviction of an offense than was previously required. *See Collins v. Youngblood*, 497 U.S. 37, 42 (1990), *citing Calder v. Bull*, 3 Dall. 386, 390 (1798). In *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), the Court stated that without evidence that the new law substantively changed the definition of criminal conduct or altered the standards of parole eligibility, it created "only the most speculative and attenuated risk of increasing the measure of punishment." *Id.* at 514.

The Ninth Circuit, in *Johnson v. Gomez*, 92 F.3d 964 (9th Cir. 1996), a case factually similar to the instant case, rejected the contention that the California Governor's reversal of a grant of parole by the BPT violated the ex post facto clause. The appellate panel ruled that by merely adding a stage of review the law remained "neutral" rather than invidious:

> In this case, Johnson is similarly unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in *Morales*, he had not been granted parole under the old law. *Morales*, 514 U.S. at ----, 115 S.Ct. at 1600. Under the old law, the BPT's decision would have been subjected to no review. Johnson's case is like *Dobbert*, where the petitioner could only speculate whether the jury would have imposed a life sentence had it possessed the final power to decide. *Dobbert*, 432 U.S. at 294 & n. 7, 97 S.Ct. at 2299 & n. 7. Here, because the

5

> BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said with certainty that the BPT would have granted Johnson parole had it possessed the final review authority.
>
> Johnson argues that, unlike the administrative convenience purpose of the law in *Morales*, the purpose and effect of the law here is to lengthen prison terms by making it more difficult for convicted murderers with indeterminate sentences to be released on parole. However, the law itself is neutral inasmuch as it gives the governor power to either affirm or reverse a BPT's granting or denial of parole. Moreover, the governor must use the same criteria as the BPT. The law, therefore, simply removes final parole decisionmaking authority from the BPT and places it in the hands of the governor. We cannot materially distinguish this change in the law from that at issue in *Mallett v. North Carolina*, 181 U.S. at 590, 21 S.Ct. at 731. In *Mallett*, the Court found no ex post facto violation where the new law allowed for higher court review of intermediate court decisions, even though the petitioner would have been entitled to a final intermediate court decision at the time of his crime. *Id.* at 597, 21 S.Ct. at 733. We therefore conclude that the application of Proposition 89 to authorize the governor's review of Johnson's grant of parole did not violate the Ex Post Facto Clause.

*Id.* at 967.

In *Garner v. Jones*, 529 U.S. 244 (2000), decided after *Johnson*, the Supreme Court addressed an inmate's as-applied constitutional challenge to "the retroactive application of a Georgia law permitting the extension of intervals between parole considerations." *Id.* at 246. The Court declared that the "standard announced in [*California Department of Corrections v.*] *Morales* [514 U.S. 499 (1995)] requires a more rigorous analysis of the level of risk created by the change in the law," rather than mere speculation: "We do not accept the Court of Appeals' supposition that the [new law] 'seems certain' to result in some prisoners serving extended periods of incarceration." *Id.* at 255. The Supreme Court stated that the relevant inquiry is that "[w]hen the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Id.*

The statute at issue in *Garner* vested the Parole Board with discretion to set an inmate's parole reconsideration hearing date and the power to permit expedited parole reviews if the circumstances warrant. *See id.* at 254. "These qualifications," the Court found, "permit a more careful and accurate exercise of the discretion the Board has had

6

from the outset." *Id.* at 254.  In evaluating whether the Board's use of its discretion was constitutionally permissible, the Court criticized the Court of Appeals for not considering the Board's internal policy statements which can provide "important instruction as to how the Board interprets its enabling statute ... and therefore whether, as a matter of fact, the amendment to the ... [statute] created a significant risk of increased punishment." *Id.* at 256.  "Absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in enforcing its obligations." *Id.* at 256.

*3.     Analysis*

Petitioner's claim fails under *Johnson* and *Garner*.  Petitioner's contentions mirror those rejected in *Johnson*.  Because the Governor's review is based on the same criteria and record used by the BPT, the layer of review itself is neutral.  Petitioner can only speculate whether the BPT, had it had the final decision-making power, would have granted parole.  Like the inmate in *Johnson*, because he had not been granted parole under the old law, petitioner cannot demonstrate that an increase in punishment occurred.

Petitioner's claim also fails under *Garner*'s as-applied test.  *Garner* directs this court to first examine whether the change is facially unconstitutional.  As discussed in the preceding paragraph, because it leaves untouched the standards by which parole eligibility is determined, the law at issue in the present petition does not violate the ex post facto clause.

Next, *Garner* directs this court to determine whether petitioner has shown that there is a significant risk that the rule's practical application will result in increasing the period of incarceration.  Petitioner has not overcome the presumption that the Governor followed the "statutory commands and internal policies in fulfilling [his] obligations." *Garner*, 529 U.S. at 256.  He has said that the "governor['s] ... tough on crime political stance ... [has]  result[ed] in the reversal of all but eight (8) out of approximately three hundred and fifty (350) findings of parole suitability by the Board of Prison Terms." Pet. Mem. at 8.  However startling this evidence may be, this high reversal rate does not show with specific facts and details that in petitioner's case the Governor did not follow the statutory commands and internal

policies in fulfilling his obligation to review decisions of the BPT.

For the foregoing reasons, habeas relief for this claim is DENIED.

C.   *The Governor's Decision is Supported by Some Evidence*

   *1.   Background*

Petitioner contends that "[a]bsent a tangible demonstration that he **currently** poses an unreasonable risk to public safety the Governor fails to meet the 'some evidence' standard." Pet. Mem. at 17.

   *2.   Applicable Federal Law*

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002).  The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915.  The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d 1123, 1128-1129 (9th Cir. 2006).

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (*quoting Hill*, 472 U.S. at 457).

The Governor does not have unfettered discretion, but rather "may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider." California Constitution, Article V, section

8

8(b).

### 3. *Analysis*

The Governor, though he noted that petitioner had made significant positive progress in prison, reversed the parole grant, stating that, "Mr. Seiler would pose an unreasonable risk to public safety if released at this time." Pet. Mem., Ex. C at 4. The stated reasons for the reversal were the gravity of petitioner's commitment offense, which demonstrates an "exceptional indifference to human suffering," petitioner's "unstable social history," which included early drug use, petitioner's misconduct reports, and the opposition of the district attorney and the police department to petitioner's release. Pet. Mem., Ex. C at 3. Petitioner disputes the significance and weight the Governor attached to these factors, including the number and importance of the misconduct reports. Pet. Mem. at 19, 27.

#### a. *Commitment Offense*

Petitioner contends that the "facts of the crime, in particular, its unplanned, spontaneous nature, do not support the Governor's unilateral finding that Petitioner's actions demonstrate exceptional indifference to human suffering." *Id.* at 22.

The Governor described the commitment offense thus: "Angry and jealous, Mr. Seiler flew into a rage when he saw his estranged wife with [the victim] Mr. Horner. He pursued them and ran his van into their car, thereby endangering their lives. When Mr. Seiler confronted Mr. Horner, he pointed a 12-gauge shotgun and fired at point blank range, killing him instantly." Pet. Mem., Ex. C at 3.

The Governor may consider the gravity of the commitment offense in assessing an inmate's suitability for parole. *See* Cal. Pen. Code § 3041(b). The commitment offense may be a circumstance indicating unsuitability for parole if the "prisoner committed the offense in an especially heinous, atrocious, or cruel manner." Cal. Code of Regs. tit. 15, § 2402(c)(1). In determining this, the Governor may consider whether "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the

offense." *Id.*

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses. In *Biggs v. Terhune*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *See* 334 F.3d 910, 916-917 (9th Cir. 2003). The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should *Biggs* continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The court in *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), however, criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

Moreover, in the recent *Irons* decision, the Ninth Circuit emphasized the continuing vitality of *Biggs*. *See Irons v. Carey*, 479 F.3d 658 (9th Cir. 2006). However, the court found that relief for Irons was precluded by *Sass*. *Id.* The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment

10

offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.* at 665.  Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Id.* (*citing Biggs*, 334 F.3d at 917).  Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

The court, having reviewed the record, finds that there was some evidence in the record to support the Governor's decision based on the commitment offense.  There is no evidence that petitioner's wife or Mr. Horner encouraged or deliberately caused petitioner's rage.  Petitioner shot Mr. Horner even though he had time to consider his actions when he pursued the pair in his vehicle.  From this, the court finds that there was some evidence to support the conclusion that the manner in which the offense was carried out with an exceptionally callous disregard for human life.

Even though petitioner asserts that the Governor ignored the fact that the Board did carefully consider the commitment offense, this is irrelevant to the constitutional issue. Even though the Governor must review the same evidence as the Board, Section 8(b) allows him to arrive at a different decision than the BPT.  This same explanation applies to petitioner's contention that the unplanned nature of the crime does not indicate an exceptional indifference to human life.  Section 8(b) allows the Governor to arrive at his own decision based on the record.

                b.      *Unstable Social History and Other Parole Suitability Factors*

The Governor also relied on petitioner's unstable social history as a factor for unsuitability.  Specifically, the Governor mentioned his use of marijuana starting at age fourteen – using it twice a month until the commitment offense – his dropping out of high school, and his trouble making friends owing to frequent changes of residences in his

1 youth. Pet. Mem., Ex. C at 3. The Governor also listed petitioner's seven misconduct
2 reports, including two "serious reports" in 1991, and the opposition of the Sacramento
3 District Attorney and the Sacramento City Police Department to his release, citing
4 petitioner's "lack of compassion and regard for the law." Pet. Mem., Ex. at 3.

5        Petitioner contends that the Governor's finding that he has an unstable social history
6 "is without foundation." Pet. Mem. at 24. Petitioner asserts that he has maintained contact
7 with his family and has received letters from former employers offering jobs to petitioner
8 after his release. *Id.* Furthermore, petitioner contends that he participated in Narcotics
9 Anonymous while in prison with favorable results. *Id.* at 25. Petitioner disputes the
10 significance and weight the Governor attached to these factors, including the number and
11 importance of the misconduct reports. *Id.* at 27. He also contends that the Governor's
12 reliance on the opinions of the police department and district attorney does not "comport to
13 statutorily defined determinations set forth" in the California Penal Code. *See id.* at 28.

14        An unstable social history is listed as a circumstance tending to indicate unsuitability.
15 Cal. Code of Regs. tit. 15, 2402(c)(3). In addition, circumstances which taken alone that do
16 not clearly establish unsuitability for parole may contribute to a pattern which results in a
17 finding of unsuitability: "[a]ll relevant, reliable information available to the panel shall be
18 considered in determining suitability for parole." *Id.* at section 2402(b).

19        The court, having reviewed the record, finds that there was some evidence in the
20 record to support the Governor's decision. While the major events of heavy drug use and
21 inadequate socialization are long past events and while at some point they may cease to
22 be entitled to much weight, they provide, at this point, some evidence supporting the
23 Governor's reversal and the state court's decision not to overturn the reversal. Though
24 petitioner disputes the significance and number of the misconduct reports, the court finds
25 that even in the absence of such reports, there was sufficient evidence to support the
26 Governor's reversal of parole.

27        Petitioner's contention that the Governor's use of the opinions of the district attorney
28 and police department is also without merit because under section 2402(b) of Title 15 of the

12

California Code of Regulations the parole decision-maker shall consider all relevant and reliable information available in determining suitability for parole. Information from the prosecutors and the arresting and investigating officers, persons who have familiarity with petitioner's criminal acts, qualifies as relevant and reliable information.

For the foregoing reasons, habeas relief is DENIED on this claim.

## CONCLUSION

The court concludes that the state court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. The court also concludes that its adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, for the foregoing reasons, the court DENIES the petition.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 30, 2007

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\SEILER911.RUL